******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

## FRANCIS ANDERSON *v.* COMMISSIONER OF CORRECTION
## (AC 43455)

Bright, C. J., and Elgo and Abrams, Js.

*Syllabus*

The petitioner, who had been convicted of various crimes, sought a writ of habeas corpus, claiming that he was entitled to certain presentence confinement credit. While serving an aggregate ten year sentence for previous convictions, the petitioner was charged with various crimes after he assaulted a correction officer and was eventually deemed not guilty by reason of insanity. After being transferred to the Whiting Forensic Hospital, he assaulted residents and staff, and was charged with various new crimes. During the ensuing criminal proceedings on those new crimes, the petitioner did not post bond, and was transferred to the Northern Correctional Institution. After he was convicted of the charges stemming from the assaults at Whiting, he was sentenced to another term of imprisonment to be served consecutively to the ten year sentence he was already serving. In his petition for a writ of habeas corpus, the petitioner claimed that he was entitled to a certain number of days of presentence confinement credit on the sentence for the Whiting crimes for the time that he spent as a pretrial detainee at Northern. The habeas court rendered a judgment of dismissal, concluding that the petition failed to state a claim on which relief could be granted, and denied the petition for certification to appeal. On the petitioner's appeal to this court, *held* that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal, the petitioner having failed to present an issue that was debatable among jurists of reason, that could be resolved in a different manner or that deserved encouragement to proceed further, as his claim did not present an issue of first impression in Connecticut appellate courts; the habeas court properly recognized that, as a sentenced prisoner in the custody of the respondent Commissioner of Correction, the petitioner was being held at Northern both pursuant to judgment mittimuses for his aggregate ten year sentence and for his failure to make bond imposed as a result of the assaults at Whiting, and, as a sentenced prisoner, he was not entitled to have the jail credits earned on his aggregate ten year sentence applied to any other sentence; moreover, pursuant to statute (§ 18-98d), presentence confinement credit is earned when the failure to make bond is the sole reason the petitioner is held at a correctional facility, and it is settled law in Connecticut that § 18-98d does not allow a petitioner to earn jail time credit and presentence confinement credit simultaneously.

Argued March 8—officially released May 18, 2021

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, rendered judgment dismissing the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*James P. Sexton*, assigned counsel, with whom, on the brief, were *Meryl R. Gersz*, assigned counsel, and *Emily Graner Sexton*, assigned counsel, for the appellant (petitioner).

*Janelle R. Medeiros*, assistant attorney general, with whom were *Steven R. Strom*, assistant attorney general, and, on the brief, *William Tong*, attorney general, and *Clare E. Kindall*, solicitor general, for the appellee

(state).



BRIGHT, C. J. The petitioner, Francis Anderson, appeals from the denial of his petition for certification to appeal from the judgment of the habeas court dismissing his petition for a writ of habeas corpus on the ground that it failed to state a claim upon which relief could be granted. The petitioner claims that the habeas court erred in denying his petition for certification to appeal because his underlying claim for presentence confinement credit presented an issue of first impression that had merit, and the court could have granted relief. We dismiss the appeal.

The following procedural history is relevant to our consideration of the petitioner's appeal. In 2008, the petitioner received a total sentence of five years of incarceration for four separate convictions. In 2011, he received an additional five year sentence for convictions arising from his criminal conduct while in prison for the previous convictions. The trial court ordered the 2011 sentence to be served consecutively to the petitioner's 2008 sentence. While serving the aggregate ten year sentence, the petitioner was charged with various crimes after he assaulted a correction officer in July, 2012. During the related criminal proceedings, he was deemed not guilty by reason of insanity, and, in 2013, he was committed to the custody of both the respondent, the Commissioner of Correction, and the Psychiatric Security Review Board.

After being transferred to the Whiting Forensic Hospital (Whiting), the petitioner assaulted residents and staff, and, as a result, he was charged with various new crimes (Whiting charges). During the ensuing criminal proceedings, the state requested that the court impose a monetary bond on the petitioner, and the court granted that request, setting the bond at $100,000. The petitioner did not post bond, and, after his arraignment on August 25, 2014, he was transferred to the Northern Correctional Institution (Northern). On April 29, 2016, the petitioner was convicted of the Whiting charges, and, on September 12, 2016, he was sentenced to a seven year term of imprisonment, execution suspended after five and one-half years, with two years of probation. The court ordered that sentence to be served consecutively to the ten year aggregate sentence the petitioner already was serving.

On July 7, 2017, the petitioner filed a petition for a writ of habeas corpus claiming that he was entitled to 750 days of presentence confinement credit on the sentence for the Whiting charges for the time, between August 25, 2014, and September 12, 2016, that he spent at Northern while awaiting trial on the Whiting charges. On July 1, 2019, the habeas court sent notice to the parties that it would be holding a hearing to determine whether the petition failed to state a claim upon which

habeas relief could be granted. Following the hearing, the court, on August 16, 2019, rendered a judgment of dismissal, concluding that the petition failed to state a claim upon which relief could be granted. The petitioner thereafter filed a petition for certification to appeal from the court's judgment, which the court denied. This appeal followed.

The petitioner claims that the habeas court erred in denying his petition for certification to appeal because his underlying claim for presentence confinement credit was an issue of first impression in Connecticut appellate courts, that it had merit, and that it was a claim upon which relief could have been granted by the habeas court. We disagree.

"Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that [1] the issues are debatable among jurists of reason . . . [2] [the] court could resolve the issues [in a different manner] . . . or . . . [3] the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification . . . we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Internal quotation marks omitted.) *Torres* v. *Commissioner of Correction*, 175 Conn. App. 460, 467–68, 167 A.3d 1020 (2017), cert. denied, 328 Conn. 912, 179 A.3d 1271 (2018). Previously, this court has concluded that issues of first impression in Connecticut appellate courts must meet one or more of the three criteria. See, e.g., id. (habeas court abused discretion in denying petition for certification to appeal because issues of whether General Statutes § 18-98e gives pretrial detainees opportunity to earn risk reduction earned credits to be applied retroactively to sentences, and whether failure to do so would be violation of pretrial detainees' right of equal protection, presented two issues of first impression in Connecticut); see also *Small* v. *Commissioner of Correction*, 98 Conn. App. 389, 391–92, 909 A.2d 533 (2006) (petitioner's claim deserves encouragement to proceed further when no appellate case has decided precise issues), aff'd, 286

Conn. 707, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008); *Graham* v. *Commissioner of Correction*, 39 Conn. App. 473, 476, 664 A.2d 1207 (petitioner's claim regarding appropriate jail time credit under unique circumstances not considered previously by any appellate court in Connecticut was one of first impression and, therefore, was debatable among jurists of reason and court could resolve issue in different manner), cert. denied, 235 Conn. 930, 667 A.2d 800 (1995).

In the present case, after conducting a review of the petitioner's claim, we are not persuaded that his claim presents an issue of first impression for any Connecticut appellate court. Rather, it presents a unique and, for the reasons set forth in this opinion, wholly unpersuasive interpretation of the relevant statutes and of our Supreme Court's decision in *State* v. *Anderson*, 319 Conn. 288, 127 A.3d 100 (2015). We, thus, proceed to examine the merits of the petitioner's claim that, pursuant to the plain language of General Statutes § 18-98d and other related statutes, he was entitled to presentence confinement credit toward his sentence on the Whiting charges for the time he was held at Northern awaiting trial on those charges.

The petitioner contends that the only reason he was transferred to Northern, rather than being allowed to remain at Whiting, which is not a correctional facility, was because he was unable to post bond, and, therefore, pursuant to § 18-98d, he should have been given presentence confinement credit toward his sentence on the Whiting charges, in addition to the credit he was being given toward the aggregate ten year sentence he already was serving. We are not persuaded.

"[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation. . . . Additionally, statutory silence does not necessarily equate to ambiguity. . . . If the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intention of the legislature and there is no room for judicial construction." (Citations omitted; internal quotation marks omitted.) *Torres* v. *Commissioner of Correction*, supra, 175 Conn. App. 470.

Section 18-98d provides: "(a) (1) Any person who

is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (B) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement, except that if a person is serving a term of imprisonment at the same time such person is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. In the case of a fine, each day spent in such confinement prior to sentencing shall be credited against the sentence at a per diem rate equal to the average daily cost of incarceration as determined by the Commissioner of Correction.

"(2) (A) Any person convicted of any offense and sentenced on or after October 1, 2001, to a term of imprisonment who was confined to a police station or courthouse lockup in connection with such offense because such person was unable to obtain bail or was denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence in accordance with subdivision (1) of this subsection equal to the number of days which such person spent in such lockup, provided such person at the time of sentencing requests credit for such presentence confinement. Upon such request, the court shall indicate on the judgment mittimus the number of days such person spent in such presentence confinement.

"(B) Any person convicted of any offense and sentenced prior to October 1, 2001, to a term of imprisonment, who was confined in a correctional facility for such offense on October 1, 2001, shall be presumed to have been confined to a police station or courthouse lockup in connection with such offense because such person was unable to obtain bail or was denied bail and shall, unless otherwise ordered by a court, earn a reduction of such person's sentence in accordance with the provisions of subdivision (1) of this subsection of one day.

"(C) The provisions of this subdivision shall not be applied so as to negate the requirement that a person

convicted of a first violation of subsection (a) of section 14-227a and sentenced pursuant to subparagraph (B) (i) of subdivision (1) of subsection (g) of said section serve a term of imprisonment of at least forty-eight consecutive hours.

"(b) In addition to any reduction allowed under subsection (a) of this section, if such person obeys the rules of the facility such person may receive a good conduct reduction of any portion of a fine not remitted or sentence not suspended at the rate of ten times the average daily cost of incarceration as determined by the Commissioner of Correction or ten days, as the case may be, for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against such person may not be counted more than once in computing a good conduct reduction under this subsection.

"(c) The Commissioner of Correction shall be responsible for ensuring that each person to whom the provisions of this section apply receives the correct reduction in such person's sentence; provided in no event shall credit be allowed under subsection (a) of this section in excess of the sentence actually imposed."

The petitioner also directs us to General Statutes § 17a-561, which provides: "The Whiting Forensic Hospital shall exist for the care and treatment of (1) patients with psychiatric disabilities, confined in facilities under the control of the Department of Mental Health and Addiction Services, including persons who require care and treatment under maximum security conditions, (2) persons convicted of any offense enumerated in section 17a-566 who, after examination by the staff of the diagnostic unit of the hospital as herein provided, are determined to have psychiatric disabilities and be dangerous to themselves or others and to require custody, care and treatment at the hospital, (3) inmates in the custody of the Commissioner of Correction who are transferred in accordance with sections 17a-512 to 17a-517, inclusive, and who require custody, care and treatment at the hospital, and (4) persons committed to the hospital pursuant to section 17a-582 or 54-56d."

The petitioner argues that "a reading of the relevant statutes renders their meaning 'plain and unambiguous' and 'does not yield absurd or unworkable results.' . . . A reading of the relevant portions of . . . § 18-98d states that an individual is entitled to receive credit for presentence confinement at a 'community correctional center or correctional institution' if the 'sole reason for such person's presentence confinement' is 'an inability to obtain bail or the denial of bail.' . . . Further, General Statutes § 53a-168 (1) defines '[c]orrectional institution' as 'the facilities defined in section 1-1 and any other correctional facility established by the Commissioner of Correction.' Pursuant to General Statutes § 1-1 (w),

' "[c]orrectional institution", "state prison", "community correctional center" or "jail" means a correctional facility administered by the Commissioner of Correction.' . . . Therefore, the plain and unambiguous meaning of § 18-98d is that if an individual is confined at a correctional institution as a pretrial detainee, and the only reason for such confinement is because the individual did not obtain or was denied bail, then that individual is entitled to receive credit for the time spent as a pretrial detainee [toward] a subsequently imposed sentence." (Citations omitted.)

The petitioner further argues that he "was found [not guilty by reason of insanity] for crimes he committed while he was incarcerated, and, on August 15, 2013, he was subsequently committed to the custody of the Commissioner of Mental Health and Addiction Services and transferred to Whiting. On August 25, 2014, the petitioner was removed from Whiting and transferred to the custody of the Commissioner of Correction and placed at Northern because he failed to post bond imposed as a result of assaults he committed while he was at Whiting. The petitioner was held at Northern as a pretrial detainee from August 25, 2014, through his sentencing on September 12, 2016. Given this background, a plain reading of the relevant statutes supports his assertion that he is entitled to presentence credit for the time he spent as a pretrial detainee [toward] his sentence imposed on September 12, 2016. The sole reason the petitioner was removed from Whiting and placed at Northern, a correctional institution, is due to his failure to post bond. If the petitioner had posted bond on August 25, 2014, he would have remained at Whiting and would not have been placed at a correctional institution. Therefore, pursuant to § 18-98d, the petitioner is entitled to presentence credit for the time he spent at Northern before the imposition of his September 12, 2016 sentence."

The crux of the petitioner's argument is that Whiting is not a correctional facility, and the only reason he was removed from Whiting and sent to Northern was because he could not post the bond ordered by the trial court. Therefore, he argues, his placement at Northern was a presentence confinement on the Whiting charges. Had he posted bond, he argues, he would have remained at Whiting, a noncorrectional facility. The petitioner, however, ignores the fact that he also was a sentenced prisoner, still serving his ten year aggregate sentence, although placed at Whiting, and he was earning credit against that aggregate ten year sentence during the time he was at Whiting and then at Northern. Nonetheless, the petitioner asserts that he is entitled to credit twice, first going toward the remainder of his aggregate ten year sentence and next going toward the Whiting charges. We disagree.

As this court has explained previously: "By its very

terms . . . § 18-98d is directed at offsetting the length of a prison sentence by the period of presentence confinement. Credits are properly applied to reduce the number of days of sentenced confinement to reflect days spent in presentence confinement . . . . Once presentence confinement credit has been fully utilized to reduce a sentence, it cannot be applied again to reduce another sentence." (Citation omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Bernstein* v. *Commissioner of Correction*, 83 Conn. App. 77, 81–82, 847 A.2d 1090 (2004).

In *King* v. *Commissioner of Correction*, 80 Conn. App. 580, 836 A.2d 466 (2003), cert. denied, 267 Conn. 919, 841 A.2d 1191 (2004), the petitioner, Eric King, had been charged by information on May 18, 1995, and was held in lieu of bond for 264 days until February 6, 1996, when he was sentenced to nine months imprisonment on that charge. Id., 582. The respondent applied the 264 days of presentence confinement to advance the release date of the sentence to February 15, 1996. Id. On June 15, 1995, however, while King was being held in presentence confinement under the May 18, 1995 information, he was arrested and held in lieu of bond under a second information. Id. Thus, he was held in presentence confinement for 236 days under two different informations. Id. After King was sentenced under the second information to an eighteen year term of imprisonment, the respondent refused to apply the 236 days of presentence confinement to the sentence stemming from the June 15, 1995 information because it already had been applied to advance the release date on the sentence stemming from the May 18, 1995 information. Id., 582–83. King then filed a petition for a writ of habeas corpus. Id., 583.

In affirming the habeas court's judgment of dismissal, this court explained: "Once a day of presentence confinement has been credited to reduce the term of sentenced confinement under one information, it cannot be credited again to reduce the term of sentenced confinement under another information." Id., 587. In *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 860 A.2d 715 (2004), our Supreme Court discussed this court's decision in *King*, cited it with approval, and concluded that it contained an accurate interpretation of § 18-98d. Id., 828–29.

In *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 802, 950 A.2d 1220 (2008), our Supreme Court explained that, in *Harris*, it "announced for the first time [its] conclusion that § 18-98d (a) prohibits the respondent from crediting multiple sentences, imposed on different days, with the same presentence confinement when a prisoner had been imprisoned simultaneously in multiple dockets." It further explained and reaffirmed its holding in *Cox* v. *Commissioner of Correction*, 271 Conn. 844, 852, 860 A.2d 708 (2004), that,

"once the respondent has applied presentence confinement credit to a prisoner's first imposed sentence, the credit has been fully utilized." *Washington* v. *Commissioner of Correction*, supra, 802–803.

Although recognizing the very clear holdings that credit cannot be applied twice, the petitioner contends that, pursuant to the plain language of § 18-98d, his case is different because the "sole reason" he was transferred to Northern from a noncorrectional facility was because he did not pay the court-ordered bond. He contends that this fact distinguishes his case from cases similar to those cited previously in this opinion. The respondent argues that the petitioner's failure to pay his bond was not the "sole reason" for his confinement at Northern. We agree with the respondent.

Pursuant to § 18-98d (a) (1) (B), "[a]ny person who is confined to a . . . correctional institution . . . because such person is unable to obtain bail . . . shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days . . . such person spent in such facility . . . provided . . . the provisions of this section shall only apply to a person for whom the existence of . . . an inability to obtain bail . . . *is the sole reason for such person's presentence confinement* . . . ." (Emphasis added.)

In the present case, the habeas court recognized that, as a sentenced prisoner in the custody of the respondent, the petitioner, although found not guilty by reason of insanity for the crimes he committed in July, 2012, and sent to Whiting, nevertheless, simultaneously was being held pursuant to judgment mittimuses for his ten year aggregate sentence. The court held, therefore, that the petitioner was not confined at Northern solely on the basis of his failure to pay the court ordered bond. The court explained: "[T]he entire time [the petitioner] was at Whiting, he was receiving jail credits under [his aggregate ten year] sentence and so that sentence still existed . . . . [O]ther than the fact that the Whiting commitment was involved, [the petitioner] is no different than any other prisoner who is serving a sentence [when he] picks up new criminal charges and, even though [he already is] serving a prison sentence, a court determines that some bond . . . should be imposed. It still, again, does not remove the ultimate fact that [the petitioner], as a sentenced prisoner, was not entitled to the credits on any other sentence . . . . It's not the sole reason he was in custody, nor is he entitled to use that credit twice." We agree with the reasoning of the habeas court.

The petitioner contends that the sole reason *he was transferred* to Northern was his failure to make bond. Even if we were to agree, for the sake of argument, that the sole reason for the petitioner's transfer was his failure to make bond, the reason for the petitioner's *transfer* from Whiting is not a consideration of § 18-

98d. The statute requires that the failure to make bond be the sole reason the petitioner *is held* at a correctional facility. In the present case, the petitioner was a sentenced prisoner, serving a ten year aggregate sentence, in the custody of the respondent, when, in July, 2012, he committed new crimes. In subsequent criminal proceedings, he was found not guilty by reason of insanity, and he was sent to Whiting. The mittimuses for his aggregate ten year sentence continued to exist, however, and the petitioner was receiving credit on those sentences for the days he was at Whiting, where he simultaneously was held in the custody of the respondent and the Psychiatric Security Review Board. His commitment to the respondent did not dissolve simply because he was found not guilty by reason of insanity for later crimes and sent to Whiting. Had that commitment to the Psychiatric Security Review Board ended, the petitioner would have been required to serve the remainder of his aggregate ten year sentence at a correctional facility. When he failed to make bond and was ordered to Northern, he was held there both as a person who failed to make bond *and* as a sentenced prisoner serving an aggregate ten year sentence. Section 18-98d (a) (1) (B) requires that the failure to make bond be "the sole reason for such person's presentence confinement . . . ." The statute says nothing about the reason for the person's *transfer* to the correctional facility. In the present case, the petitioner both failed to make bond and was a sentenced prisoner still serving an aggregate ten year sentence for which he was earning credit. His confinement at Northern was not "solely" due to his inability to make bond. Our law is clear—a prisoner cannot "earn *presentence* confinement credit while *serving a sentence*." (Emphasis in original.) *Bernstein* v. *Commissioner of Correction*, supra, 83 Conn. App. 81.

In an attempt to avoid this well settled principle of law, the petitioner argues in his reply brief that he was "an insanity acquittee in the custody of the Psychiatric Security Review Board" and that he "lost his designation as sentenced prisoner (even for his 2011 convictions) once he became an insanity acquittee who could no longer be punished." He further argues, relying on his interpretation of *State* v. *Anderson*, supra, 319 Conn. 314 n.37, that, "once [he] became an insanity acquittee, *he could no longer be punished*, which is why he was serving his 2011 sentence at Whiting (i.e., a nonpunitive hospital) and why he had to be designated as a pretrial detainee, rather than as a previously sentenced inmate, when he was detained at Northern prior to being convicted and sentenced for his 2014 assaults at Whiting." (Emphasis added.) During oral argument before this court, the petitioner also argued that, in *Anderson*, our Supreme Court held that the petitioner was a pretrial detainee and that "it is mutually exclusive [that] you are not both a pretrial detainee and a sentenced inmate.

Either you are a pretrial detainee, in the sense that you are entitled to bail, which a sentenced inmate is not, or—and that you would be entitled to preconfinement credit, which a sentenced inmate would not, or you're not a pretrial detainee, you're a sentenced inmate."

The petitioner's arguments are without merit and ignore reality. Although the petitioner had been found not guilty by reason of insanity on the July, 2012 charges, he, nevertheless, still was serving an aggregate ten year sentence for prior convictions when that acquittal occurred. His prior convictions and his ten year aggregate sentence did not vanish, as the petitioner suggests, simply because he was found not guilty by reason of insanity on other subsequent charges. In his reply brief, the petitioner attempts to portray himself simply as an insanity acquittee, rather than as an insanity acquittee who also was serving a simultaneous sentence for convictions that occurred before he was found not guilty by reason of insanity on later charges.

Indeed, if we accepted the petitioner's interpretation of *Anderson*; see *State* v. *Anderson*, supra, 319 Conn. 314 n.37; taken to the extreme, it could mean that (1) a person (P) could commit multiple dangerous felonies and effectively be ordered to serve multiple life sentences; (2) P, several years into his sentence, could commit additional crimes while incarcerated, even relatively minor crimes; (3) P then could be found by the jury to have been insane at the time he committed the additional crimes several years into his sentence for multiple dangerous felonies; (4) P would be relieved of his multiple life sentences, although he was not insane at the time he committed the multiple dangerous felonies; (5) after some time, P no longer fits the insanity designation; and (6) P cannot be sent back to prison because "he could no longer be punished." We are not convinced that *Anderson* or anything in our law supports such an absurd outcome.

Accordingly, we conclude that a convicted prisoner, who subsequently is sent to Whiting after being found not guilty by reason of insanity on new criminal changes, and who then commits additional crimes while at Whiting and who thereafter fails to make bond on the Whiting charges, cannot earn double credit pursuant to § 18-98d; he is not being held at the correctional facility "solely" due to his failure to make bond, but, rather, he is being held at that correctional facility both for a failure to make bond *and* as a prisoner already sentenced to the custody of the respondent, for which he is earning jail time credit. In other words, it is settled law in Connecticut that § 18-98d does not allow a petitioner to earn jail time credit and presentence confinement credit simultaneously.[1] See *Bernstein* v. *Commissioner of Correction*, supra, 83 Conn. App. 81. The petitioner has failed to present an issue that is debatable among jurists of reason, that could be resolved in a

different manner, or that deserves encouragement to proceed further. Accordingly, the habeas court did not abuse its discretion when it denied the petition for certification to appeal from the judgment dismissing the petitioner's petition for a writ of habeas corpus.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] We do not mean to suggest that there could not be a situation where a petitioner's jail time credit could not be *converted* to presentence confinement credit. See *James* v. *Commissioner of Correction*, 327 Conn. 24, 47, 170 A.3d 662 (2017) ("[s]ection 18-98d (a) (1) (B) . . . contemplates circumstances where time in prison could be converted to presentence confinement credit"); see generally *Boyd* v. *Lantz*, 487 F. Supp. 2d 3 (D. Conn. 2007). That is not the petitioner's claim in this case.